UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

---

**ANDREW MARK SMIGELSKI,**

    *Plaintiff,*

                                         *v.*

**FEDERAL BUREAU OF INVESTIGATION, et al.,**

    *Defendants.*

**Case No. 2:25-cv-01013**

**Judge Edmund A. Sargus, Jr.**

**Magistrate Judge Kimberly A. Jolson**

---

## PLAINTIFF'S OBJECTION TO
## REPORT AND RECOMMENDATION
## AND REQUEST FOR DE NOVO REVIEW

*Filed Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)*

*Emergency Consideration Requested Due to Ongoing Constitutional Violations*

**COMES NOW** Plaintiff Andrew Mark Smigelski, appearing *pro se,* and respectfully objects to the Magistrate Judge's Report and Recommendation (Doc. 3) filed September 16, 2025, which recommends dismissal of this action. This objection is timely filed within fourteen days pursuant to 28 U.S.C. § 636(b)(1). Plaintiff respectfully requests this Honorable Court conduct a *de novo* review and **REJECT** the Report and Recommendation for the reasons set forth below, particularly in light of the extraordinary retaliatory conduct that began the exact day this lawsuit

was filed.

## I. INTRODUCTION: THE COURT CANNOT IGNORE ONGOING RETALIATION

**The Magistrate's Report fails to address the elephant in the room:** Beginning on June 11, 2025—the precise day Plaintiff filed this FOIA/Privacy Act lawsuit—Defendants initiated a campaign of systematic mail interference, electronic surveillance, and physical intimidation that continues to this day. This is not speculation; it is documented fact that transforms this case from a routine FOIA dispute into an extraordinary case of government retaliation against a civil litigant.

**The temporal connection is undeniable:** Plaintiff filed his FOIA lawsuit on the morning of June 11, 2025. That same day, his work phone was shipped via USPS and immediately misrouted through Florida. Since then, he has experienced 40+ daily internet outages via apparent IMSI catchers, ongoing physical surveillance of his humanitarian work, and systematic mail interference. This is not coincidence—this is retaliation.

**The Report and Recommendation must be rejected because:** (1) The exhaustion requirement should be excused due to Defendants' demonstrated bad faith and the futility of administrative remedies; (2) The ongoing retaliation provides compelling evidence that Defendants are withholding records and acting in bad faith; (3) The conspiracy claim is now supported by overwhelming evidence of coordinated federal action; and (4) This Court must exercise its equitable powers to prevent ongoing constitutional violations.

## II. STATEMENT OF FACTS THE MAGISTRATE DID NOT CONSIDER

**A. The Postmaster's Own Assessment.** When Plaintiff's packages went missing for weeks at the Columbus Distribution Center, the local Sugar Grove Postmaster examined the tracking histories and stated it was "strange" and "unusual" that properly addressed packages would be misrouted through wrong states and detained without explanation. This assessment from a postal professional with decades of experience confirms the interference was not normal

mail processing.

**B. Amazon Package Tampering.** Multiple Amazon packages have arrived torn open and resealed with non-Amazon tape, as documented in Amazon's own delivery confirmation photographs. Amazon does not ship packages with tears sealed by generic tape. This physical tampering of mail constitutes a federal crime under 18 U.S.C. § 1708 and demonstrates the breadth of the mail interference campaign.

**C. Pattern of Interference Tied to Litigation.** As detailed in Plaintiff's Emergency Motion for TRO (filed contemporaneously), the interference includes:

- **June 11, 2025:** FOIA case filed; work phone shipped same day via Priority Mail

- **June 11-22:** Package inexplicably routed NY → Florida → Ohio (wrong direction)

- **June 22:** Columbus Distribution Center threatens confiscation for "insufficient postage"

- **June 20:** Second package shipped from Massachusetts

- **June 23-July 3:** Second package sits motionless at Columbus Distribution Center for 10 days

- **July 3:** Missing Mail Search Request filed

- **July 5:** Package suddenly "found" and delivered within 48 hours of complaint

- **Ongoing:** Amazon packages arrive torn open and retaped with non-Amazon tape

**D. Electronic Surveillance.** AT&T network diagnostics reveal "HTTP access failed - Echo detected" anomalies consistent with IMSI catcher deployment. These disruptions occur precisely when Plaintiff works on FOIA litigation materials—demonstrating real-time content monitoring. The surveillance methods employed exist in a deliberate gray zone—operating in the light of apparent legitimacy one moment, then vanishing into the dark of unaccountable shadow operations the next. This calculated ambiguity makes it impossible to determine which agency is responsible, what authority they claim, or how to seek redress.

**E. Physical Surveillance of Humanitarian Work.** When Plaintiff began distributing

life-saving Naloxone to overdose prevention boxes, law enforcement officers began appearing at these remote rural locations *before* Plaintiff's arrival. This pre-positioning requires real-time tracking and coordination across jurisdictions.

="legal-citation">Maczko v. Joyce, 814 F.2d 308, 310 (6th Cir. 1987).

**The futility exception clearly applies here:**

- Defendants claim "no records" exist while simultaneously conducting surveillance that necessarily generates records

- The 5-day response claiming to have searched 14 separate databases demonstrates the search was perfunctory at best, fraudulent at worst

- The immediate retaliation beginning the day of filing shows Defendants will not act in good faith

- An administrative appeal to the same agency conducting illegal surveillance would be an exercise in futility

Moreover, the D.C. Circuit—the leading circuit on FOIA jurisprudence—has held that "when an agency has already denied a request and made clear that an appeal would be futile, exhaustion is not required." *Hidalgo v. FBI*, 344 F.3d 1256, 1260 (D.C. Cir. 2003). Here, Defendants' response that "no records" exist across 14 databases, combined with their immediate retaliatory conduct, makes abundantly clear that any administrative appeal would be futile.

**The ongoing harm exception also applies.** Every day that passes without judicial intervention, Plaintiff suffers ongoing constitutional violations through mail interference and warrantless surveillance. Requiring exhaustion while Defendants continue their retaliatory campaign would sanction ongoing constitutional violations. See *Bowen v. City of New York*, 476 U.S. 467, 483 (1986) (exhaustion excused where plaintiffs would suffer irreparable harm).

## IV. OBJECTION TWO: THE COMPLAINT STATES VALID FOIA AND PRIVACY ACT CLAIMS

The Magistrate concluded that Plaintiff failed to allege facts showing records were "improperly withheld." This conclusion ignores the substantial circumstantial evidence of withholding:

**1. Temporal Impossibility:** Defendants claim to have searched 14 separate databases in 5 days, including:

- Guardian and eGuardian (threat tracking systems)

- National Crime Information Center (NCIC)

- Next Generation Identification (NGI)

- N-DEx (criminal justice information sharing)

- VICAP (violent crime database)

- Criminal Justice Information Services (CJIS)

- National Instant Criminal Background Check System (NICS)

- TECS (Treasury Enforcement Communications System)

- Law Enforcement Online (LEO)

- NSIRS (National Security Information Reporting System)

Any genuine search of these systems would require weeks, not days.

**2. Surveillance Necessarily Generates Records:** The ongoing surveillance campaign necessarily creates records in these very databases, yet Defendants claim none exist.

**3. Pattern of Deception:** An agency that conducts illegal mail interference and warrantless surveillance cannot be trusted to conduct honest FOIA searches.

At the motion to dismiss stage, Plaintiff need only allege facts that make withholding "plausible." *Iqbal*, 556 U.S. at 678. The combination of the impossibly quick response, the breadth of databases allegedly searched, and the contemporaneous retaliatory conduct makes improper withholding not just plausible but highly probable.

**V. OBJECTION THREE: THE CONSPIRACY CLAIM IS NOW ABUNDANTLY**

**SUPPORTED**

---

The Magistrate found Plaintiff's conspiracy claim conclusory. However, the Emergency TRO Motion provides extensive factual support for each element of conspiracy:

**1. Single Plan:** The coordinated interference with mail, electronic surveillance, and physical surveillance demonstrates a unified plan to retaliate against Plaintiff for filing this FOIA lawsuit.

**2. Shared Objective:** The surveillance spans multiple agencies and jurisdictions:

- FBI (claimed recipient of FOIA request)

- USPS/Columbus Distribution Center (mail interference)

- Local law enforcement across multiple Ohio counties (physical surveillance)

- Unknown entities operating IMSI catchers (electronic surveillance)

This multi-jurisdictional coordination requires federal orchestration and shared objectives.

**3. Overt Acts Causing Injury:** Multiple overt acts in furtherance of the conspiracy:

- Misrouting and detaining mail packages

- Tampering with Amazon packages

- Deploying IMSI catchers to disrupt communications

- Pre-positioning surveillance at Naloxone distribution sites

- Forcing cessation of life-saving humanitarian work

The conspiracy began the exact day this lawsuit was filed. This temporal connection, combined with the coordinated multi-agency response, provides far more than the "plausibility" required at this stage. See *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004) ("Timing alone may be significant enough to constitute indirect evidence of a causal connection.").

## VI. OBJECTION FOUR: INDIVIDUAL DEFENDANTS SHOULD REMAIN FOR DISCOVERY

---

While the Magistrate correctly notes that FOIA claims typically proceed against agencies, not individuals, this case presents extraordinary circumstances. The individual Defendants Pam Bondi and Kash Patel are sued in both official and personal capacities for their roles in the retaliatory conspiracy. At minimum, they should remain as defendants for purposes of discovery to determine:

- Whether they personally directed or approved the retaliatory surveillance

- Their knowledge of the "no records" response despite ongoing surveillance

- Their role in the conspiracy to violate Plaintiff's constitutional rights

Moreover, to the extent the retaliation constitutes violations of Plaintiff's First and Fourth Amendment rights under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), the individual defendants are proper parties. The Court should not dismiss them before Plaintiff has opportunity to conduct discovery regarding their personal involvement.

## VII. OBJECTION FIVE: THIS COURT MUST EXERCISE ITS EQUITABLE POWERS

Even if this Court agrees with the Magistrate's technical analysis, it cannot ignore the extraordinary circumstances presented. Federal courts possess inherent equitable powers to prevent ongoing constitutional violations. See *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946) ("Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction.").

**This Court faces a choice:** dismiss on technicalities while constitutional violations continue, or exercise its equitable powers to stop ongoing retaliation. The Constitution demands the latter.

The evidence shows that filing this FOIA lawsuit triggered immediate, ongoing, and escalating retaliation. Dismissing this case would signal to Defendants that they can violate citizens' constitutional rights with impunity so long as they claim "no records" exist and force futile administrative exhaustion while continuing their illegal conduct.

## VIII. REQUEST FOR EXPEDITED HEARING ON TRO MOTION

Plaintiff has filed an Emergency Motion for Temporary Restraining Order documenting the ongoing constitutional violations. Given the Magistrate's recommendation of dismissal, it is even more critical that this Court immediately address the TRO motion to:

- Stop the ongoing mail interference that violates 18 U.S.C. § 1701

- Cease warrantless electronic surveillance via IMSI catchers

- End the intimidation preventing life-saving Naloxone distribution

- Preserve evidence before Defendants destroy it

The Court should consolidate consideration of this Objection with the TRO Motion, as they present interlocking issues regarding Defendants' bad faith and ongoing retaliation.

## IX. ALTERNATIVE RELIEF REQUESTED

Should this Court find any technical deficiencies in the Complaint, Plaintiff respectfully requests leave to amend rather than dismissal. The extraordinary facts that have emerged since filing—particularly the documented retaliation—would cure any pleading deficiencies the Court might identify. See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

At minimum, this Court should:

1. Order limited discovery regarding the surveillance and mail interference before dismissal

2. Stay any dismissal pending resolution of the TRO Motion

3. Appoint counsel given the complexity and constitutional significance of the issues

4. Transfer this matter to a different magistrate given the failure to consider the retaliation evidence

## X. CONCLUSION

The Report and Recommendation reads like a review of a routine FOIA case. **This is not a routine FOIA case.** This is a case where filing a FOIA lawsuit triggered immediate and ongoing retaliation through mail interference, electronic surveillance, and physical intimidation. The Postmaster confirms the mail interference is "strange." Amazon's own photographs document package tampering. Network diagnostics reveal electronic surveillance. Law enforcement appears at remote locations before Plaintiff arrives.

**These are not allegations—these are documented facts the Magistrate did not consider.**

The exhaustion requirement exists to promote administrative efficiency and give agencies opportunity to correct errors. It does not exist to trap citizens in a Kafkaesque nightmare where they must exhaust administrative remedies with the very agency that is surveilling them, interfering with their mail, and preventing them from distributing life-saving medication.

This Court must reject the Report and Recommendation and exercise its authority to stop ongoing constitutional violations. The alternative—dismissing this case while Defendants continue their retaliation—would mark a dark day for civil liberties and the rule of law.

**WHEREFORE, Plaintiff respectfully requests this Court:**

1. REJECT the Report and Recommendation

2. CONDUCT de novo review of all issues

3. IMMEDIATELY CONSIDER the Emergency TRO Motion

4. STOP the ongoing constitutional violations

5. PROTECT the integrity of the judicial process

Justice delayed is justice denied. Every day of delay enables further retaliation.


*Respectfully submitted,*

**Andrew Mark Smigelski**

1015 Bryan Road

Sugar Grove, OH 43155

(614) 607-1230

smigelski.andy@gmail.com

*Plaintiff, Pro Se*


Date: October 3, 2025

---

### CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2025, I filed the foregoing Objection to Report and Recommendation with the Clerk of the Court for the United States District Court for the Southern District of Ohio via the Court's ECF system, which will automatically serve electronic notice upon all counsel of record.

The following parties will be served automatically through the ECF system:

**United States Attorney's Office**

Southern District of Ohio

303 Marconi Boulevard, Suite 200

Columbus, OH 43215

(Counsel for Federal Defendants)


All other parties of record registered with ECF

Additionally, courtesy copies were sent via email to USAOH.ECF@usdoj.gov

_____

**Andrew Mark Smigelski**

Date: October 3, 2025