# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

ANDREW SMIGELSKI,

    Plaintiff,

v.

U.S. CUSTOMS AND BORDER PROTECTION;

U.S. DEPARTMENT OF HOMELAND SECURITY;

KRISTI NOEM, in her official capacity as

   Secretary of Homeland Security;

OFFICER GONZALEZ (first name unknown),

   in individual and official capacities;

OFFICER SIEFERT (first name unknown),

   in individual and official capacities;

JOHN DOE CBP OFFICERS 1-10,

    Defendants.

**Case No.** 5:25-CV-267 _____

## JURY TRIAL DEMANDED

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

### I. INTRODUCTION

1. Plaintiff Andrew Smigelski, a United States citizen, brings this action against the U.S. Customs and Border Protection ("CBP"), the U.S. Department of Homeland Security ("DHS"), and individual CBP officers for violations of his constitutional rights during a detention at the Laredo Port of Entry on November 25, 2025.

2. On that date, Plaintiff was detained for approximately five to six (5-6) hours after being in Mexico for only three to five (3-5) minutes due to a vehicle registration issue. During this detention, CBP officers: (a) unlawfully seized Plaintiff's federally legal hemp products; (b) denied Plaintiff access to the DHS Office of Inspector General despite posted policies guaranteeing such access; (c) coerced Plaintiff into signing documents without providing

copies; (d) conducted warrantless forensic searches of Plaintiff's electronic devices; and (e) demonstrated willful ignorance of federal hemp law despite Plaintiff's clear explanation of the applicable legal standard.

3. This action arises from these violations of the Fourth and Fifth Amendments to the United States Constitution, the Privacy Act (5 U.S.C. § 552a), the Federal Tort Claims Act, and DHS's own published policies.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (claims against the United States), and 5 U.S.C. § 552a(g) (Privacy Act civil remedies).

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) because the events giving rise to this action occurred at the Laredo Port of Entry, which is located within this judicial district.

6. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201-2202 and injunctive relief under its inherent equitable powers.

## III. PARTIES

### A. Plaintiff

7. Plaintiff Andrew Smigelski is a citizen of the United States and a resident of the State of Ohio. At all times relevant to this Complaint, Plaintiff was lawfully traveling as a United States citizen.

### B. Defendants

8. Defendant U.S. Customs and Border Protection is a federal law enforcement agency within the Department of Homeland Security responsible for securing the nation's borders.

9. Defendant U.S. Department of Homeland Security is a cabinet department of the United States government responsible for public security, including the supervision of CBP.

10. Defendant Kristi Noem is the Secretary of the Department of Homeland Security and is sued in her official capacity.

11. Defendant OFFICER GONZALEZ (first name unknown) is a CBP officer stationed at the Laredo Port of Entry who participated in Plaintiff's unlawful detention, the seizure of his property, and the denial of his rights on November 25, 2025. Officer Gonzalez acted as a supervisor during the incident. Officer Gonzalez is sued in both individual and official capacities.

12. Defendant OFFICER SIEFERT (first name unknown) is a CBP officer stationed at the Laredo Port of Entry who participated in Plaintiff's unlawful detention, the seizure of his

property, and the denial of his rights on November 25, 2025. Officer Siefert acted as a supervisor during the incident and made demonstrably false statements regarding federal law. Officer Siefert is sued in both individual and official capacities.

13. Defendants JOHN DOE CBP OFFICERS 1-10 are unknown CBP officers stationed at the Laredo Port of Entry who participated in Plaintiff's unlawful detention, search, and the seizure of his property. These defendants are sued in their individual capacities. Their identities will be determined through discovery.

## C. Explicit Exclusion and Commendation — Officer Sanchez

14. Plaintiff specifically notes that OFFICER SANCHEZ (first name unknown), also stationed at the Laredo Port of Entry, treated Plaintiff with professionalism, courtesy, kindness, and attentiveness throughout the November 25, 2025 detention. Officer Sanchez demonstrated the highest standards of law enforcement conduct and treated Plaintiff with dignity and respect even during a difficult and stressful situation.

15. Officer Sanchez is NOT named as a defendant in this action.

16. Plaintiff affirmatively requests that CBP leadership and the Department of Homeland Security recognize Officer Sanchez's exemplary conduct and consider Officer Sanchez for formal commendation, recognition, and promotion. Officer Sanchez's behavior represents the standard to which all CBP officers should be held and demonstrates that professional, constitutional law enforcement is both possible and necessary.

## IV. FACTUAL ALLEGATIONS

### A. Background: Plaintiff's Active Federal Litigation

17. Plaintiff has an active federal lawsuit against the Federal Bureau of Investigation, *Smigelski v. FBI et al.*, Case No. 2:25-cv-01013, pending in the United States District Court for the Southern District of Ohio, Eastern Division.

18. That litigation involves claims of unlawful surveillance, FOIA violations, network attacks, and coordinated harassment by federal agents.

19. The events described herein occurred while that litigation was pending and active, raising serious concerns about inter-agency coordination and retaliation against Plaintiff for exercising his constitutional right to petition the government for redress of grievances.

### B. The November 25, 2025 Border Crossing

20. On November 25, 2025, Plaintiff inadvertently crossed into Mexico near Laredo, Texas.

21. Plaintiff was in Mexico for approximately three to five (3-5) minutes before being turned around by Mexican authorities because he only possessed his previous year's vehicle registration rather than a current registration.

22. Plaintiff, a United States citizen with a valid United States passport, then returned to the United States through the Laredo Port of Entry.

23. Upon Plaintiff's return, CBP officers detained Plaintiff for secondary inspection.

24. Plaintiff was detained for approximately five to six (5-6) hours—an extraordinary duration for a United States citizen who had been in Mexico for less than five minutes over a minor vehicle registration issue.

## C. Unlawful Seizure of Federally Legal Hemp Products

25. During the detention, CBP officers searched Plaintiff's belongings and seized hemp-derived gummies that Plaintiff possessed.

26. The product packaging clearly displayed: "10mg Delta-9 THC" per serving.

27. According to CBP's own documentation that Plaintiff was required to sign, Plaintiff possessed five (5) gummies with a combined total mass of 30.2 grams. Plaintiff was not provided a copy of this documentation despite requesting it.

28. Based on CBP's documented weight and the labeled THC content, the total Delta-9 THC content was 50mg (5 gummies × 10mg each).

29. By calculation: 50mg ÷ 30,200mg = 0.00166 = 0.166% THC by dry weight.

30. Under the Agriculture Improvement Act of 2018 (the "2018 Farm Bill"), codified at 7 U.S.C. § 1639o, hemp is defined as cannabis containing no more than 0.3% Delta-9 THC on a dry weight basis. Hemp so defined was explicitly removed from the Controlled Substances Act's definition of marijuana. See 21 U.S.C. § 802(16)(B).

31. Plaintiff's gummies, at 0.166% THC by dry weight, were well below the 0.3% federal threshold and therefore constituted federally legal hemp products.

## D. Plaintiff's Clear Notice to CBP Officers Regarding Federal Hemp Law

32. Plaintiff immediately and explicitly informed the seizing officers that the gummies were federally legal hemp products compliant with the 2018 Farm Bill.

33. Plaintiff specifically explained to multiple CBP officers, including Supervisors GONZALEZ and SIEFERT, that hemp-derived products containing Delta-9 THC are federally legal provided they contain no more than 0.3% THC on a dry weight basis.

34. Plaintiff informed the officers that his gummies contained approximately 0.166% THC by dry weight—well below the 0.3% federal threshold—and were therefore lawful to possess under federal law.

35. Plaintiff was clear, direct, and unambiguous in conveying this information. He did not merely assert the products were legal; he cited the specific legal standard and explained how his products satisfied it.

**E. Supervisor Siefert's Response Demonstrating Willful Ignorance of Federal Law**

36. In response to Plaintiff's accurate explanation of federal law, Supervisor SIEFERT stated words to the effect of: "THC is actually illegal and nothing has changed about that in my 34-year career."

37. This statement is demonstrably false. The 2018 Farm Bill, signed into law on December 20, 2018, explicitly removed hemp (defined as cannabis containing no more than 0.3% THC on a dry weight basis) from the Controlled Substances Act's definition of marijuana.

38. Supervisor SIEFERT's claim that "nothing has changed" regarding THC's legal status in his 34-year career reflects either: (a) a willful refusal to learn or apply current federal law; (b) deliberate indifference to Plaintiff's constitutional rights; (c) a systemic failure by CBP to train its officers on significant changes to federal controlled substances law; or (d) all of the above.

39. At the time of this incident, the 2018 Farm Bill had been in effect for approximately seven (7) years. A 34-year CBP supervisor's claimed ignorance of this major statutory change is inexcusable.

**F. Multiple Officers Repeated the Same Legal Error**

40. Supervisor SIEFERT was not alone in his misunderstanding. Multiple CBP officers present during Plaintiff's detention pointed to the "10mg Delta-9 THC" label on Plaintiff's gummies and stated words to the effect of: "THC is illegal, but CBD is fine."

41. This statement reflects a fundamental misunderstanding of federal hemp law. The legality of hemp products does not turn on whether they contain "THC" or "CBD." It turns on whether the THC concentration exceeds 0.3% by dry weight.

42. A product containing 10mg of Delta-9 THC per serving can be—and in this case was—fully compliant with federal law, as the relevant measure is percentage concentration by dry weight, not milligrams per serving.

43. The fact that multiple CBP officers repeated the same legally incorrect statement—"THC illegal, CBD fine"—demonstrates a pattern of inadequate training that is systemic rather than isolated.

**G. Coerced Signatures and Denial of Documentation**

44. During the detention, CBP officers required Plaintiff to sign multiple documents, including a forfeiture document for the seized gummies and a form regarding material support for terrorist organizations (referencing organizations such as Tren de Aragua, MS-13,

45. Plaintiff signed these documents under duress, having been detained for hours with no indication of when he would be released.

46. Defendants refused to provide Plaintiff with copies of any documents he was required to sign.

47. Defendants also confiscated and refused to return the plastic bag containing Plaintiff's personal property that was on his person at the time of detention.

**H. Denial of Access to DHS Office of Inspector General**

48. During his detention, Plaintiff observed posted signage at the Laredo Port of Entry detention facility stating "KEEP DETENTION SAFE" and informing detainees of their right to contact the Department of Homeland Security Office of Inspector General ("DHS OIG").

49. Plaintiff requested to exercise this right and contact DHS OIG multiple times during his detention.

50. Each request was denied by CBP agents.

51. When Plaintiff pointed to the posted signage guaranteeing this right, agents falsely claimed that the right to contact DHS OIG "wasn't for people in detention" or words to that effect—despite the signage being posted within the detention area specifically for detainees.

52. This denial of access to DHS OIG violated CBP's own posted policies, denied Plaintiff his right to report potential misconduct, and suggests consciousness of wrongdoing by the agents involved.

**I. Unlawful Device Searches**

53. During the detention, CBP officers searched Plaintiff's electronic devices, including his laptop computer and cellular phones.

54. Upon information and belief, CBP officers conducted forensic copying of data from Plaintiff's devices.

55. Under *United States v. Cano*, No. 22-50432 (5th Cir. 2023), and related authority, forensic searches of electronic devices at the border require at least reasonable suspicion.

56. No reasonable suspicion existed to justify a forensic search of Plaintiff's devices. Plaintiff is a United States citizen who had been in Mexico for approximately five minutes due to a vehicle registration issue.

**J. Pattern of Coordinated Federal Harassment**

57. The November 25, 2025 detention was not an isolated incident but part of an ongoing pattern of harassment by federal agencies against Plaintiff.

58. Plaintiff has documented surveillance, network attacks, mail interference, and other harassment in connection with his pending FBI litigation.

59. The excessive duration of the detention (5-6 hours), the pretextual nature of the seizure, the forced signing of terrorism-related documents, and the denial of oversight access all suggest coordination with Plaintiff's ongoing federal litigation.

## V. CLAIMS FOR RELIEF

**COUNT I: Fourth Amendment — Unreasonable Seizure of Property (Bivens)**

*Against Defendants Gonzalez, Siefert, and John Does 1-10*

60. Plaintiff incorporates by reference all preceding paragraphs.

61. The Fourth Amendment prohibits unreasonable seizures of property.

62. Defendants seized Plaintiff's property—federally legal hemp gummies—without lawful justification.

63. Plaintiff explicitly informed Defendants that the property was legal and explained the applicable federal standard. Defendants ignored this information.

64. No reasonable officer, having been informed of the 2018 Farm Bill and the 0.3% THC threshold, could have believed the seizure was lawful.

65. Defendants' conduct was objectively unreasonable and violated clearly established law.

**COUNT II: Fourth Amendment — Unreasonable Device Search (Bivens)**

*Against Defendants Gonzalez, Siefert, and John Does 1-10*

66. Plaintiff incorporates by reference all preceding paragraphs.

67. The Fourth Amendment protects against unreasonable searches.

68. Forensic searches of electronic devices at the border require at least reasonable suspicion under Fifth Circuit precedent.

69. Defendants conducted forensic searches of Plaintiff's electronic devices without reasonable suspicion.

70. Defendants' conduct violated Plaintiff's clearly established Fourth Amendment rights.

**COUNT III: Fifth Amendment — Deprivation of Property Without Due Process (Bivens)**

*Against Defendants Gonzalez, Siefert, and John Does 1-10*

71. Plaintiff incorporates by reference all preceding paragraphs.

72. The Fifth Amendment prohibits the federal government from depriving individuals of property without due process of law.

73. Defendants deprived Plaintiff of his lawful property without any process.

74. Plaintiff received no hearing, no opportunity to contest the seizure, and no documentation of the seizure.

75. Defendants' conduct violated Plaintiff's clearly established due process rights.

## COUNT IV: Failure to Train / Supervisory Liability

*Against U.S. Customs and Border Protection and Department of Homeland Security*

76. Plaintiff incorporates by reference all preceding paragraphs.

77. The statements of Supervisor Siefert ("THC is actually illegal and nothing has changed about that in my 34-year career") and multiple CBP officers ("THC is illegal, but CBD is fine") demonstrate that CBP has failed to adequately train its officers on the 2018 Farm Bill and the current legal status of hemp-derived THC products.

78. This failure to train is not an isolated incident but reflects a pattern or practice, as evidenced by multiple officers repeating the same legally incorrect information.

79. The need for training on the 2018 Farm Bill was obvious: it fundamentally changed federal law regarding hemp and THC, CBP officers regularly encounter travelers with hemp products, and the consequences of inadequate training (unlawful seizures, constitutional violations) were entirely predictable.

80. CBP's deliberate indifference to the need for training on this significant change in federal law caused the violation of Plaintiff's constitutional rights.

## COUNT V: Privacy Act Violations (5 U.S.C. § 552a)

*Against U.S. Customs and Border Protection and Department of Homeland Security*

81. Plaintiff incorporates by reference all preceding paragraphs.

82. The Privacy Act requires federal agencies to maintain accurate records and provide individuals access to records about themselves.

83. Defendants created records about Plaintiff (including signed documents, seizure records, and device search records) but refused to provide Plaintiff with copies.

84. Defendants' conduct violated the Privacy Act.

## COUNT VI: Denial of Access to DHS OIG — Policy Violation

*Against All Defendants*

86. DHS and CBP policies, as posted at the Laredo Port of Entry detention facility, guarantee detainees the right to contact the DHS Office of Inspector General.

87. Defendants repeatedly denied Plaintiff's requests to exercise this right.

88. Defendants' false claim that the right "wasn't for people in detention" was contrary to the posted policy and suggests consciousness of wrongdoing.

## COUNT VII: Intentional Infliction of Emotional Distress (FTCA)

*Against the United States*

89. Plaintiff incorporates by reference all preceding paragraphs.

90. Defendants' conduct—detaining a United States citizen for 5-6 hours, seizing legal property while demonstrating willful ignorance of federal law, denying access to oversight, coercing signatures on terrorism-related documents, and refusing to provide documentation— was extreme and outrageous.

91. Defendants knew or should have known that such conduct would cause severe emotional distress.

92. Plaintiff suffered severe emotional distress as a result of Defendants' conduct.

## COUNT VIII: False Imprisonment (FTCA)

*Against the United States*

93. Plaintiff incorporates by reference all preceding paragraphs.

94. Defendants detained Plaintiff for approximately 5-6 hours.

95. The duration of this detention was unreasonable and unjustified under the circumstances —a United States citizen who had been in Mexico for approximately five minutes due to a vehicle registration issue.

96. Plaintiff was confined against his will without lawful justification.

### VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter a declaratory judgment that Defendants violated Plaintiff's rights under the Fourth and Fifth Amendments to the United States Constitution, the Privacy Act, and DHS/CBP policies;

B. Enter a declaratory judgment that hemp products containing less than 0.3% Delta-9 THC by dry weight are federally legal under 7 U.S.C. § 1639o and may not be seized by CBP;

C. Enter injunctive relief requiring CBP to train its officers on the 2018 Farm Bill and the current legal status of hemp-derived THC products;

D. Order the return of Plaintiff's seized property or, if no longer available, its monetary value;

E. Order Defendants to provide Plaintiff with copies of all documents he was required to sign on November 25, 2025;

F. Award compensatory damages for the violation of Plaintiff's constitutional and statutory rights;

G. Award punitive damages against the individual Defendants;

H. Award costs of suit and reasonable attorney's fees to the extent permitted by law;

I. Grant such other and further relief as the Court deems just and proper.

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

_Andrew Smigelski_

Andrew Smigelski, Pro Se

1015 Bryan Road

Sugar Grove, Ohio 43155

614-607-1230

Smigelski.andy@gmail.com

Dated: December 10, 2025

Andrew Smigelski

1015 Bryan Road
Sugar Grove, Ohio 43155
(614) 607-1230
Smigelski.andy@gmail.com

Date: \_December 10, 2025_____

Clerk of Court
United States District Court
Southern District of Texas, Laredo Division
1300 Victoria Street
Laredo, TX 78040

**RE: Request for Pro Se ECF Filing Privileges — Smigelski v. U.S. Customs and Border Protection, et al.**

Dear Clerk of Court:

I am filing the above-captioned civil action pro se in the United States District Court for the Southern District of Texas, Laredo Division. I respectfully request permission to file documents electronically through the Court's CM/ECF (Case Management/Electronic Case Files) system.

In support of this request, I provide the following information:

**1. Full Legal Name:** Andrew Mark Smigelski

**2. Mailing Address:** 1015 Bryan Road, Sugar Grove, Ohio 43155

**3. Email Address:** Smigelski.andy@gmail.com

**4. Telephone Number:** (614) 607-1230

**5. Case Caption:** Smigelski v. U.S. Customs and Border Protection, et al.

**6. Case Number:** To be assigned

**7. Nature of Case:** Civil rights action (Bivens) and Federal Tort Claims Act claims arising from unlawful detention, seizure of property, and constitutional violations by CBP officers at the Laredo Port of Entry on November 25, 2025.

I understand and agree to comply with all requirements for electronic filing, including:

      (a) Filing documents in PDF format;

      (b) Maintaining a valid email address for service and notification;

      (c) Redacting personal identifiers as required by Fed. R. Civ. P. 5.2;

      (d) Complying with all Local Rules and CM/ECF Administrative Procedures;

I have access to a computer with internet connectivity and am capable of converting documents to PDF format. I am familiar with electronic filing procedures, having previously filed documents electronically in the United States District Court for the Southern District of Ohio (Case No. 2:25-cv-01013).

If the Court requires any additional information or documentation in support of this request, please contact me at the email address or telephone number provided above.

Thank you for your consideration of this request.

Respectfully submitted,

Andrew Smigelski, Pro Se
1015 Bryan Road
Sugar Grove, Ohio 43155
(614) 607-1230
Smigelski.andy@gmail.com

**Enclosures:**

1. Complaint for Declaratory and Injunctive Relief and Damages
2. Civil Cover Sheet (JS-44)
3. Summons (8 copies)
4. Filing Fee ($405) OR Application to Proceed In Forma Pauperis