## UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO — EASTERN DIVISION

---

| | |
|---|---|
| **ANDREW MARK SMIGELSKI,** <br><br> Plaintiff, <br><br> *v.* <br><br> **FEDERAL BUREAU OF INVESTIGATION, ET AL.,** <br><br> Defendants. | Case No. 2:25-cv-01013 <br><br> Judge Edmund A. Sargus, Jr. <br><br> Magistrate Judge Kimberly A. Jolson <br><br> **PLAINTIFF'S MOTION FOR SANCTIONS REGARDING DEFENDANTS' INTERFERENCE WITH PLAINTIFF'S COMMERCIAL TRANSACTIONS VIA NATIONAL SECURITY LETTER** |

## INTRODUCTION

1. Plaintiff Andrew Mark Smigelski, proceeding pro se and **in forma pauperis**, respectfully moves this Court for sanctions against Defendants for what appears to be continued First Amendment retaliation—this time through the issuance of a National Security Letter ("NSL") to Sedo.com, an international domain name marketplace, resulting in the cancellation of Plaintiff's first significant commercial transaction since commencing this litigation.

2. **The harm is not abstract.** Plaintiff has IFP status because he is impoverished. The cancelled sale of the domain therewasanattempt.com would have generated more income than Plaintiff earns in an entire year. The FBI's apparent interference with this transaction constitutes economic warfare against a pro se litigant who dared to exercise his First Amendment rights by suing the Bureau.

## FACTUAL BACKGROUND

### A. PLAINTIFF'S IFP STATUS AND ECONOMIC CIRCUMSTANCES

3. This Court granted Plaintiff leave to proceed in forma pauperis in this action, having reviewed Plaintiff's financial circumstances and determined that Plaintiff qualifies as indigent under 28 U.S.C. § 1915.

4. Plaintiff's income is irregular and unpredictable. Significant sales opportunities are rare.

### B. THE DOMAIN SALE AND ITS SUDDEN CANCELLATION

5. On or about January 10, 2026, Sedo.com—one of the world's largest domain marketplaces—notified Plaintiff that a buyer had agreed to purchase his domain therewasanattempt.com.

6. Sedo created a payment request for the buyer and initiated the standard transfer process, assigning a Transfer Specialist named Pedro to manage the transaction.

7. The buyer—a real person located in San Antonio, Texas, whose contact information Plaintiff now possesses—apparently experienced payment difficulties. Sedo sent multiple payment reminders: January 13, January 16, and January 21, 2026.

8. On January 21, 2026, after three payment reminders, Sedo suddenly placed the transfer "on hold" citing a "security check," stating:

> *"Our system recently flagged the transfer of the domain therewasanattempt.com due to security reasons. To make domain transfers as secure as possible for you, we investigate these incidents and sometimes request additional information from involved customers."*

9. **Two days later, on January 23, 2026, Sedo cancelled the transaction entirely**, providing only this cryptic explanation:

> *"Please be aware that marketplace integrity and security are of the highest value at Sedo. During a review by our marketplace security team we have assessed a security issue.* ***Sedo will therefore not proceed with the transaction at this point.****"*

10. Notably, Sedo's cancellation notice stated that the cancellation "in no way affects the Purchase & Sales Agreement between the seller and the buyer," and that if Plaintiff and the buyer "agree to continue the transaction, Sedo may proceed with the transfer."

11. This language is telling. Sedo is not claiming fraud. Sedo is not claiming the transaction is illegal. Sedo is saying **they cannot proceed**—while acknowledging the underlying agreement remains valid.

## C. THE HALLMARKS OF NSL INTERFERENCE

12. The FBI issues National Security Letters pursuant to 18 U.S.C. § 2709 and other statutory authorities. NSLs compel third parties to produce records and, critically, include gag orders prohibiting the recipient from disclosing the NSL's existence.

13. Since 2001, the FBI has issued over 500,000 NSLs. Studies show that 97% include permanent gag orders preventing disclosure. Even after USA FREEDOM Act reforms in 2015, the FBI terminates only 6.4% of NSL gag orders upon review—meaning 93.6% remain in effect indefinitely.

14. Companies served with NSLs cannot disclose their existence. They cannot explain why they suddenly cannot do business with a customer. They can only cite vague "security" concerns—**exactly as Sedo did here**.

15. The pattern of Sedo's communications matches precisely what a company would say if served with an NSL:

    - Vague reference to "security" without any specifics
    - Sudden system "flagging" after transaction was already underway
    - Inability to explain the actual reason for cancellation
    - Acknowledgment that the underlying transaction remains valid—but they simply "cannot proceed"
    - Direction to contact support through specific "Security" category channels

16. If Sedo had detected actual fraud, they would say so. If the buyer's payment method was problematic, they would say so. If there was a trademark dispute, they would say so. Instead, Sedo deployed the language of forced silence—the fingerprints of an NSL gag order.

**D. THE BUYER IS A REAL PERSON PLAINTIFF HAS NEVER MET**

17. Plaintiff has obtained the buyer's identity and contact information through Sedo's Purchase & Sales Agreement, which was made available to Plaintiff on January 23, 2026.

18. The buyer appears to be a legitimate person located in San Antonio, Texas. Plaintiff has never communicated with this person, never met this person, and has no connection to this person whatsoever.

19. The only arguable "connection" is that Plaintiff briefly passed through San Antonio in late 2025 on his way to Laredo, Texas—to visit the Alamo, a popular tourist destination, before crossing the border to flee FBI surveillance and harassment documented extensively in this case.

20. The suggestion that this coincidental tourist stop in one of America's largest cities somehow connects Plaintiff to an unknown domain buyer would be laughable—if it weren't apparently being used to destroy Plaintiff's livelihood.

**E. THE TIMING IS NOT COINCIDENTAL**

21. This Court is already familiar with the pattern: Plaintiff exercises First Amendment rights, and the FBI retaliates.

22. Plaintiff filed FOIA requests—FBI retaliated with mail surveillance. Plaintiff filed this lawsuit—packages were intercepted and routed through Washington, D.C. headquarters. Plaintiff sent settlement demands to Defendants in December 2025—and now his commercial transactions are being blocked.

23. The cancelled Sedo transaction follows the same temporal pattern: escalating litigation activity followed by new forms of interference designed to economically strangle the pro se plaintiff.

## LEGAL STANDARD FOR SANCTIONS

24. Federal courts possess inherent authority to impose sanctions for litigation misconduct, including conduct that interferes with a party's ability to prosecute their claims. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).

25. Additionally, 28 U.S.C. § 1927 authorizes sanctions against any party who "multiplies the proceedings... unreasonably and vexatiously."

26. When a party engages in conduct designed to economically destroy their opponent's ability to continue litigation—particularly against an IFP plaintiff—sanctions are appropriate and necessary to preserve the integrity of judicial proceedings.

## ARGUMENT

### A. THE FBI HAS THE MEANS, MOTIVE, AND OPPORTUNITY

27. **Means:** The FBI can issue NSLs without judicial approval. An FBI Special Agent in Charge need only certify that records are "relevant" to an authorized national security investigation—a standard dramatically lower than probable cause or even reasonable suspicion.

28. **Motive:** Plaintiff has sued the FBI. Plaintiff has filed extensive FOIA requests. Plaintiff has documented FBI misconduct and filed complaints with the Office of Professional Responsibility. Plaintiff has sent settlement demands. The FBI has every motive to economically destroy Plaintiff.

29. **Opportunity:** Sedo is a Delaware corporation operating internationally. NSL authority under 18 U.S.C. § 2709 extends to electronic communication service providers. Domain registrars and marketplaces—which process billions in transactions and maintain detailed customer records—are precisely the type of entity the FBI targets with NSLs.

### B. SEDO'S CONDUCT IS INCONSISTENT WITH NORMAL BUSINESS OPERATIONS

30. Domain marketplace transactions fail for identifiable reasons: payment fraud, trademark disputes, domain theft, or buyer/seller misconduct. In each case, the marketplace can and does explain the reason for cancellation.

31. Sedo's refusal to provide any explanation—while simultaneously acknowledging the underlying transaction remains valid—makes sense only if Sedo has been legally prohibited from explaining.

32. The gag provisions of NSLs prohibit recipients from disclosing not just the content of the

NSL, but its very existence. 18 U.S.C. § 2709(c). Sedo's vague "security" language and inability to proceed despite a valid agreement is exactly what NSL compliance looks like.

## C. ECONOMIC HARM TO AN IFP PLAINTIFF WARRANTS SANCTIONS

33. Plaintiff has IFP status because he is impoverished. This Court reviewed Plaintiff's finances and determined he cannot afford court filing fees.

34. The cancelled domain sale was for **$25,000**—more income than Plaintiff typically earns in an entire year. This was not a speculative opportunity—it was a completed sale awaiting only payment processing.

35. Plaintiff retains ownership of the domain therewasanattempt.com and will have future opportunities to court buyers. However, the FBI's interference has caused concrete, immediate harm: the loss of a $25,000 sale to a willing buyer, the chilling effect on future buyers who may fear similar "security" flags, and the reputational damage of having transactions cancelled by major marketplaces.

36. Because this interference was intentional—targeting a pro se plaintiff in active litigation against the FBI—treble damages are appropriate. The FBI did not accidentally issue an NSL to Sedo; this was deliberate economic warfare designed to punish Plaintiff for exercising his First Amendment rights.

37. This Court should not permit Defendants to use the machinery of national security to destroy an IFP plaintiff economically while his case is pending.

## D. DISCOVERY IS NECESSARY AND APPROPRIATE

38. Plaintiff cannot definitively prove FBI issued an NSL to Sedo because the entire purpose of NSL gag orders is to prevent such proof from becoming available.

39. However, the circumstantial evidence is compelling:

    - Sedo's language matches NSL-constrained corporate communications
    - The timing follows Plaintiff's litigation activity
    - The FBI has documented hostility toward Plaintiff
    - The transaction cancellation lacks any other plausible explanation

- Sedo acknowledges the underlying transaction remains valid but claims they cannot proceed

40. Plaintiff respectfully requests the Court order Defendants to produce:

- All communications between FBI and Sedo.com regarding Plaintiff or any of his domains
- All NSLs issued to Sedo.com in 2025-2026
- All NSLs issued regarding Plaintiff, his domains, or his business activities
- All records of FBI monitoring of Plaintiff's commercial activities

41. If the FBI asserts privilege or state secrets, the Court should conduct in camera review and, at minimum, draw adverse inferences from the FBI's refusal to deny NSL issuance.

## PRAYER FOR RELIEF

42. WHEREFORE, Plaintiff respectfully requests that this Court:

   A. **Order Defendants to produce** all records of communications with Sedo.com, all NSLs related to Plaintiff or his business activities, and all records of surveillance of Plaintiff's commercial transactions;

   B. **Conduct in camera review** of any materials Defendants claim are privileged or protected by state secrets;

   C. **Draw adverse inferences** that the FBI issued an NSL to Sedo if Defendants refuse to produce relevant records or deny NSL issuance;

   D. **Award treble damages** in the amount of **$75,000** (three times the $25,000 sale price) based on Defendants' intentional interference with Plaintiff's commercial transaction, plus consequential damages for reputational harm and chilling effect on future sales;

   E. **Issue a preliminary injunction** prohibiting Defendants from issuing further NSLs or other process designed to interfere with Plaintiff's commercial activities during the pendency of this litigation;

   F. **Refer the matter to the Office of Professional Responsibility** and Department of Justice Inspector General for investigation of FBI abuse of NSL authority for retaliatory purposes;

G. **Grant such other relief** as the Court deems just and proper.

Respectfully submitted,

**/s/ Andrew Mark Smigelski**
**ANDREW MARK SMIGELSKI**
Plaintiff, Pro Se
Current Address: Medellín, Colombia
Email: smigelski.andy@gmail.com
Phone: (614) 607-1230

Dated: January 27, 2026

---

**CERTIFICATE OF SERVICE**

I hereby certify that on January 27, 2026, a copy of the foregoing Motion for Sanctions was served via the Court's CM/ECF electronic filing system on all counsel of record.

**/s/ Andrew Mark Smigelski**
**ANDREW MARK SMIGELSKI**

## EXHIBIT A: SEDO TRANSFER OVERVIEW

*[Attach Sedo Transfer Overview PDF showing transaction history and cancellation]*